UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JANEL GREEN,<br>MARY MARGARET OLIVER, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. |
| v. | ) ) ) | |
| NATHAN DEAL, individually<br>and in his official capacity as Governor of<br>the State of Georgia;<br>STEVE STANCIL, individually and in his<br>official capacity as Executive Director of<br>the Georgia Building Authority;<br>JAMIEL JONES, individually and in his<br>official capacity as Marketing Supervisor<br>of the Georgia Building Authority, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## **COMPLAINT**

COME NOW Plaintiffs and bring this action against Defendants for violations of the First and Fourteenth Amendments of the United States Constitution for the unconstitutional permitting system in Section 2.5(4) of the Capitol and Grounds Exhibit and Event Guidelines.

1

*Parties*

1. Plaintiff Janel Green is a United States citizen over the age of eighteen. She is the Executive Director of the Georgia Alliance for Social Justice. She has lived in Georgia at all times relevant to the complaint.

2. Plaintiff Mary Margaret Oliver is a United States citizen over the age of eighteen. She serves as State Representative for House District 82. She has lived in Georgia at all times relevant to the complaint.

3. Defendant Nathan Deal is the Governor of Georgia and serves as Chair of the Georgia Building Authority. He is sued in his individual and official capacities. At all times relevant to the complaint, he has acted under the color of law.

4. Defendant Steve Stancil is the Executive Director of the Georgia Building Authority. He is sued in his individual and official capacities. At all times relevant to the complaint, he has acted under the color of law.

5. Defendant Jamiel Jones is the Marketing Supervisor of the Georgia Building Authority. He is sued in his individual and official capacities. At all times relevant to the complaint, he has acted under the color of law.

*Jurisdiction and Venue*

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this case presents a federal question under 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the United States Constitution.

7. Upon service of process, this Court acquires personal jurisdiction of the Defendants under Fed.R.Civ.P. 4(k)(1)(a).

8. Venue is proper in the Northern District of Georgia (Atlanta Division) under 28 U.S.C. § 1391(b) because all actions complained of occurred within the boundaries of this district and Defendants reside within this district.

## STATEMENT OF UNDISPUTED FACTS

9. The Georgia Building Authority ("GBA") is responsible for all services associated with the management of numerous facilities in the Capitol Hill complex. Liberty Plaza is one of those facilities.

10. GBA identifies Liberty Plaza as a traditional public forum and it has been used as a traditional public forum. It is designated by the state as "Our Front Door," and includes replicas of both the Statue of Liberty and the Liberty Bell:

> "Liberty Plaza" now becomes the major focal point for large groups that hold public rallies and assemblies both during and between legislative sessions. The public plaza is large enough to accommodate over 3,000 visitors and is located across from the Georgia State Capitol. The Liberty Bell and the Statue of Liberty replicas previously located on the Capitol grounds were relocated to prominent locations in the new

Plaza.  https://gba.georgia.gov/gallery/liberty-plaza

11. The Capitol and Grounds Exhibit and Event Guidelines set up a separate permit process regulating use of the Capitol and Grounds for events on weekends and any events not between 6:00 am and 6:00 pm on weekdays:

> Requests for an event to be held in Liberty Plaza after normal business hours as provided in paragraph 2 of this section 2.5 will not be approved unless such event is: a) being held or hosted by a constitutional officer of the State of Georgia; and b) the purpose for such event is of statewide significance and non-partisan based. As the chair of GBA, the Governor retains the discretion to determine whether or not the above referenced conditions a) and b) are met.  Section 2.5(4).

12. By its terms, Section 2.5(4) applies to all "constitutional officers."

13. The Georgia Constitution identifies "constitutional officers" in Article 9, Section 1, Paragraph III as also including:

> (a) The clerk of the superior court, judge of the probate court, sheriff, tax receiver, tax collector, and tax commissioner, where such office has replaced the tax receiver and tax collector, shall be elected by the qualified voters of their respective counties for terms of four years and shall have such qualifications, powers, and duties as provided by general law.

> (b) County officers listed in subparagraph (a) of this Paragraph may be on a fee basis, salary basis, or fee basis supplemented by salary, in such manner as may be directed by law. Minimum compensation for said county officers may be established by the General Assembly by general law. Such minimum compensation may be supplemented by local law or, if such authority is delegated by local law, by action of the county governing authority.

(c) The General Assembly may consolidate the offices of tax receiver and tax collector into the office of tax commissioner."

14. In contravention of the Georgia Constitution's designation of "constitutional officers," the Georgia Building Authority has narrowly defined "constitutional officers as: "'Elected constitutional executive officer,' how defined. As used in this section, the term 'elected constitutional executive officer' means the Governor, the Lieutenant Governor, the Secretary of State, the Attorney General, the State School Superintendent, the Commissioner of Insurance, the Commissioner of Agriculture, and the Commissioner of Labor." *See* Exhibit A, Emails. Each of these positions has been held by a Republican since 2011 and some positions have been held by a Republican since 2002.

15. Section 2.5(4) only allows permits for use of Liberty Plaza during these times if the event is of "statewide significance," but there is no definition whatsoever of what the term "statewide significance" means.

16. Section 2.5(4) only allows permits for use of Liberty Plaza during these times if the event is "non-partisan based." However, again, there is no definition of what "non-partisan based" means.

17. Section 2.5(4) vests the Governor with complete, unreviewable and unbridled discretion as the Governor "retains the discretion to determine whether or not the [conditions] are met."

18. Following the shooting at Marjory Stoneman Douglas High School on February 14, 2018, cities around the country have begun planning public demonstrations to commemorate the individuals who lost their lives that day.

19. Plaintiffs Green is leading that effort here in Atlanta. The public event will be called the "March for Our Lives" and is planned for March 24, 2018.

20. Plaintiffs planned this event as be a peaceful demonstration in support of students and children's safety on school campuses.

21. Plaintiffs sought to hold the event at Liberty Plaza on March 24, 2018.

22. On March 2, 2018, Plaintiff Green tried to file a permit application online with GBA for the event on March 24, 2018. She could not file a permit application for any event on a Saturday.

23. She contacted GBA Marketing Supervisor Jamiel Jones, who she already knew from previous permit requests she has made through her work with the Georgia Alliance for Social Justice which organized the Women's March in 2017 held at Liberty Plaza with over 60,000 attendees, which was itself held on a weekend.

24. Defendant Jones requested to meet with her and the other organizers of the March for Our Lives event.

25. On March 6, 2018, Plaintiffs Green met with GBA Executive Director Steve Stancil, Jamiel Jones, and additional GBA staff and Georgia Public Safety

officers.

26. Defendant Stancil and Jones notified Plaintiffs about a new state rule under the Capitol and Grounds Exhibit and Event Guidelines which would require that they find a "constitutional officer" sponsor for their event in order for the Governor to consider the application and accept or deny it. The permit application was not accepted during this meeting. *See* Exhibit B, Green Declaration.

27. Hours after the meeting, on March 6, 2018, Plaintiff Green met with State Representative Mary Margaret Oliver to request help in securing sponsorship from the list of constitutional officers.

28. Plaintiff Oliver sought sponsorship for the event directly from Defendant Governor Deal. *See* Exhibit C, Oliver Letter.  The permit request was denied.

29. On March 9, 2018, Plaintiff Green emailed with Defendant Jones about the definition of "constitutional officer" as she was having trouble finding a sponsor for the event on March 24, 2018. She rejected the definition from Section 2.5(4) as it was inconsistent with the Georgia Constitution's definition of "constitutional officer." Neither Defendant Jones nor other GBA personnel responded. *See* Exhibit B, Green Declaration.

30. On March 11, 2018, Plaintiffs obtained the sponsorship of Debra Deberry, the Clerk of Court of DeKalb County and a constitutional officer as defined under

the Georgia Constitution. After Plaintiff Green notified Defendants via email on March 11, 2018, GBA denied Plaintiff's third attempt to acquire their permit.

## Count I: First and Fourteenth Amendments

31.  This Count is alleged against Defendants under 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the United States Constitution.

32.  Plaintiffs sought to participate in clearly constitutionally protected free speech activity when seeking the permit to use Liberty Plaza, a traditional public forum.

33.  Section 2.5(4) is a licensing scheme for a permit, and thus operated as a prior restraint.

34.  The sponsorship requirement (facially and as interpreted to eliminate "constitutional officers" under the Georgia Constitution), vests without standards to a handful of statewide officers, and is an unconstitutional and standard-less prior restraint that invites viewpoint discrimination.   As interpreted, all officers have been only Republicans for at least seven years and as long as sixteen years.

35.   Even if one obtains a sponsor, the Governor retains complete, unbridled and unreviewable discretion to grant or withhold a permit based upon his determination of whether the event meets two undefined, vague and content-based terms: "statewide significance" and "non-partisan."

36.    The repeated denial of Plaintiff's permit application violated Plaintiffs' First Amendment rights and in application is contrary to the Georgia Constitution as a "constitutional officer sponsored the event.

37.    Section 2.5(4) is vague, overbroad, content-based, and invites politically partisan and viewpoint based discrimination with its unbridled discretion and content-based decision making.

## Count II: Fourteenth Amendment

38.    The requirement for a constitutional officer to sponsor the event is vague and overbroad in violation of the Fourteenth Amendment.  Defendants have deviated from the Georgia Constitution in their interpretation of "constitutional officer," limiting that term to certain state-wide officers.

39.    The content-based terms "non-partisan" and "statewide significance" that serve as the basis for granting or denying a permit are undefined, vague and overbroad.

40.    The Governor's unbridled discretion and unreviewable authority to approve or deny permit applications is a prior restraint on public use of Liberty Plaza in contravention of the Fourteenth Amendment.

*Prayer for Relief*

WHEREFORE, Plaintiffs request this Court:

a.      Preliminary and consolidated permanent injunctive relief as to

Section 2.5(4) of the Capitol and Grounds Exhibit and Event

Guidelines to prevent its use and enforcement;

b.      Award nominal presumed and compensatory damages against the

Defendants in their individual capacities and nominal and small

actual damages in an amount to be proven at trial and include losses

associated with costs and delays of organizing the demonstration

and repeatedly applying for permits;

c.      Award Plaintiff attorney's fees and costs under 42 U.S.C. § 1988;

d.      Grant such other and further relief as this Court deems just and

proper.

Respectfully submitted, this 12th day of March, 2018.

/s/ Gerald Weber
Georgia Bar No. 744878
Law Offices of Gerry Weber, LLC
Post Office Box 5391
Atlanta, GA 31107
(404) 522-0507

/s/ Nora Benavidez
Georgia Bar No. 698687
Law Office of Nora Benavidez
Post Office Box 8161
Atlanta, GA 31106
(310) 365-5658

## CERTIFICATION OF COMPLIANCE

The undersigned, in accordance with L.R. 7.1 and 5.1 hereby certifies that the typefont used herein is 13-Point Book Antiqua.

This 12th day of March, 2018

<div style="margin-left:45%">

/s/ Gerald Weber
Gerald Weber
Georgia Bar No. 744878

</div>

## CERTIFICATION OF ELECTRONIC FILING

The undersigned hereby certifies the filing of this Complaint, motion and accompanying brief, and verifications upon the parties and all counsel by the Court's Electronic Filing System.

This 12th day of March, 2018

/s/ Nora Benavidez
Nora Benavidez
Georgia Bar No. 698687