## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JANEL GREEN,<br>MARY MARGARET OLIVER, | ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | CIVIL ACTION FILE NO. |
| vs. | ) <br> ) | |
| NATHAN DEAL, individually<br>and in his official capacity as Governor of<br>the State of Georgia;<br>STEVE STANCIL, individually and in his<br>official capacity as Executive Director of<br>the Georgia Building Authority;<br>JAMIEL JONES, individually and in his<br>official capacity as Marketing Supervisor<br>of the Georgia Building Authority, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
| Defendants. | ) | |

## PLAINTIFFS' BRIEF IN SUPPORT OF PRELIMINARY AND/OR PERMANENT INJUNCTIVE RELIEF

Plaintiffs file this brief in support of preliminary and permanent injunctive relief as to Section 2.5(4) of the Capitol and Grounds Exhibit and Event Guidelines (hereinafter "Section 2.5(4)"), reserving damages claims for later resolution. Plaintiffs seek an injunction barring enforcement of the Section 2.5(4) as vague, overbroad, content-based and conveying standardless discretion that invites politically partisan and viewpoint based discrimination offensive to the First

Amendment at the free speech location central to Georgia state government, the Georgia State Capitol.

Specifically, Section 2.5(4) limits events occurring in Liberty Plaza on weekends and certain other times to those determined to be "of statewide significance" and "non-partisan," but provides no definition of those content based terms. The determination of whether those terms are met is, under Section 2.5(4), left to the sole and unreviewable discretion of the Governor who "retains the discretion to determine whether [those] conditions are met."

Section 2.5(4) also requires that any group seeking to have free speech events at Liberty Square, the area designated for demonstrations at the Georgia State Capitol (a traditional public forum), obtain a "constitutional officer['s]" sponsorship in order to obtain a permit. Even though the Georgia Constitution establishes "constitutional officers" that include persons such as county Clerk's of Court and Tax Commissioners, Section 2.5(4) as interpreted limits that term (in contravention of the Georgia Constitution) to a handful of statewide officeholders, all of whom have been only Republicans for at least seven years and as long as sixteen years.

Plaintiffs have the sponsorship of a constitutional officer as identified by the Georgia State Constitution, but have now twice been denied a permit by the Governor and have no avenue of review other than this Court.

## STATEMENT OF UNDISPUTED FACTS

This portion of the lawsuit is a facial challenge, and the key facts for this motion are simple and undisputed:

1. The Georgia Building Authority ("GBA") is responsible for all services associated with the management of numerous facilities in the Capitol Hill complex. Liberty Plaza is one of those facilities.

2. GBA identifies Liberty Plaza as a traditional public forum and it has been used as a traditional public forum.  It is designated by the state as "Our Front Door," and includes replicas of both the Statue of Liberty and the Liberty Bell:

> "Liberty Plaza" now becomes the major focal point for large groups that hold public rallies and assemblies both during and between legislative sessions. The public plaza is large enough to accommodate over 3,000 visitors and is located across from the Georgia State Capitol. The Liberty Bell and the Statue of Liberty replicas previously located on the Capitol grounds were relocated to prominent locations in the new Plaza.  https://gba.georgia.gov/gallery/liberty-plaza

3. The Capitol and Grounds Exhibit and Event Guidelines set up a separate permit process for events on weekends and any events not between 6:00 am and 6:00 pm on weekdays:

> Requests for an event to be held in Liberty Plaza after normal business hours as provided in paragraph 2 of this section 2.5 will not be approved unless such event is: a) being held or hosted by a constitutional officer of the State of Georgia; and

b) the purpose for such event is of statewide significance and non-partisan based. As the chair of GBA, the Governor retains the discretion to determine whether or not the above referenced conditions a) and b) are met.  Section 2.5(4).

4.   By its terms, Section 2.5(4) applies to all "constitutional officers."

5.   The Georgia Constitution identifies "constitutional officers" in Article 9, Section 1, Paragraph III as also including:

(a) The clerk of the superior court, judge of the probate court, sheriff, tax receiver, tax collector, and tax commissioner, where such office has replaced the tax receiver and tax collector, shall be elected by the qualified voters of their respective counties for terms of four years and shall have such qualifications, powers, and duties as provided by general law.

(b) County officers listed in subparagraph (a) of this Paragraph may be on a fee basis, salary basis, or fee basis supplemented by salary, in such manner as may be directed by law. Minimum compensation for said county officers may be established by the General Assembly by general law. Such minimum compensation may be supplemented by local law or, if such authority is delegated by local law, by action of the county governing authority.

(c) The General Assembly may consolidate the offices of tax receiver and tax collector into the office of tax commissioner."

6.  In contravention of the Georgia Constitution's designation of "constitutional officers," the Georgia Building Authority has narrowly defined "constitutional officers as: "'Elected constitutional executive officer,' how defined. As used in this section, the term 'elected constitutional executive officer' means the Governor, the Lieutenant

Governor, the Secretary of State, the Attorney General, the State School Superintendent, the Commissioner of Insurance, the Commissioner of Agriculture, and the Commissioner of Labor." [cite]

7. Section 2.5(4) only allows permits for use of Liberty Plaza during these times if the event is of "statewide significance," but there is no definition whatsoever of what the term "statewide significance" means.

8. Section 2.5(4) only allows permits for use of Liberty Plaza during these times if the event is "non-partisan based," but again there is no definition whatsoever of what "non-partisan based" means.

9. Section 2.5(4) vests the Governor with complete, unreviewable and unbridled discretion as the Governor "retains the discretion to determine whether or not the [conditions] are met."

10. On March 2, 2018, Plaintiff Green tried to file a permit application online with GBA and could not file for an event on a Saturday. She contacted GBA personnel who requested to meet with her.

11. On March 6, 2018, Plaintiffs Green met with GBA Executive Director Steve Stancil and other GBA staff. Defendants notified Plaintiffs that the permit application would go through once they found a sponsor for their event according to the new rule. Under the new rule, Defendants explained that the requesting party needed a constitutional officer to host their event. The

permit application was not accepted at this time. *See* Exhibit B, Green Affidavit.

12. Hours after the meeting, on March 6, 2018, State Representative Mary Margaret Oliver sought sponsorship directly from Defendant Governor Deal. *See* Exhibit C, Oliver Letter.  The permit request was denied.

13. On March 11, 2018, Plaintiffs notified GBA they had obtained the sponsorship of Debra Deberry, the Clerk of Court of DeKalb County and a constitutional officer under the Georgia Constitution.  The third permit request was still not accepted.

While other facts will be developed in discovery, these undisputed facts are all that are needed to decide the instant motion.

## ARGUMENT AND CITATION TO AUTHORITY

For the reasons stated below, both preliminary and permanent injunctive relief are appropriate in this case.

## I.     Plaintiffs Are Entitled To Injunctive Relief

A plaintiff seeking a preliminary injunction must establish: (1) a substantial likelihood that plaintiff will prevail on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant; and (4) that granting the preliminary injunction will not disserve

the public interest. *K.H. Outdoors LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006); Fed. R. Civ. P. 65(b). A plaintiff need only show a substantial likelihood of success on at least one count of the complaint, not all counts. *Butler v. Ala. Judicial Inquiry Comm'n*, 111 F. Supp. 2d 1224, 1230 (M.D. Ala. 2000).

No evidentiary hearing is necessary here given the undisputed facts and facial challenge.[1] Furthermore, "[a]t the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'"[2] Moreover, this is a case where consolidation of the preliminary injunction with permanent injunctive relief

---

[1] *See Cumulus Media, Inc. v. Clear Channel Commc'ns*, 304 F.3d 1167, 1178 (11th Cir. 2002) ("An evidentiary hearing is required for entry of a preliminary injunction only where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue." (internal quotations omitted)); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1311 (11th Cir. 1998) (holding that "Rule 65 does not require an evidentiary hearing," and that a hearing is unnecessary where "material facts are not in dispute"); *Budlong v. Graham*, 488 F. Supp. 2d 1245, 1249 (N.D. Ga. 2006) ("The Court does not read Eleventh Circuit precedent to require a trial court to hold an evidentiary hearing whenever facts might be in dispute. The determination of whether the germane facts are 'bitterly contested' is not, as this Court understands it, an exercise in the conceivable, but an assessment made on the papers and arguments in the record.").

[2] *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (quoting *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986)).

is appropriate.[3] Plaintiffs do not waive any relief, including damages, in seeking consolidation.

### A.   Plaintiffs Have a Substantial Likelihood of Success

The Governor, in his unbridled and unreviewable discretion, has twice denied a permit for an event at Liberty Plaza sponsored by a constitutional officer. Section 2.5(4) is a permit scheme that operates as a prior restraint in a traditional public forum.  The sponsorship requirement, vested without standards to a handful of statewide officers, is an unconstitutional and standardless prior restraint.  Moreover, even if one obtains a sponsor, the Governor retains complete, unbridled and unreviewable discretion to grant or withhold a permit based upon his determination of whether the event meets two undefined, vague and content-based terms: "statewide significance" and "non-partisan."

### 1.   Liberty Plaza is a Traditional Public Forum

"Use of the streets in public places has, from ancient times, been part of the privileges, immunities, rights and liberties of citizens." *Hague v. CIO*, 307 U.S. 496 (1939) (unconstitutional to give police chief veto power over leafleting in public

---

[3] *See Drummond v. Fulton Cty. Dep't of Family and Children's Servs.*, 563 F.2d 1200, 1204 (5th Cir. 1977) (holding that such "consolidation represented a responsible exercise of judicial discretion in view of the essentially legal nature of the contest and the need for prompt action on this case"); *Budlong*, 488 F. Supp. 2d at 1248–50 (analyzing the factors to be considered in consolidating a preliminary injunction with a trial on the merits without the necessity of a hearing).

places). "[S]treets are natural and proper places for the dissemination of information." *Schneider v. Town of Irvington*, 308 U.S. 147, 163 (1939) (no permit required). "One who is rightfully on a street which the state has left open to the public carries with him there as elsewhere the constitutional right to express his views in an orderly fashion." *Jamison v. Texas*, 318 U.S. 413, *416* (1943). "Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thought between citizens, and discussing public questions." *Hague v. CIO*, 307 U.S. 496 (1939).

> 2.   The Sponsorship and Approval requirements are prior restraint.

The sponsorship of a constitutional officer requirement and the approval of the permit by the Governor are prior restraints because they require government permission prior to engaging in expression. "A prior restraint on expression exists when the government can deny access to a forum for expression before the expression occurs." *United States v. Frandsen*, 212 F.3d 1231, 1236–37 (11th Cir. 2000). The sponsorship and Governor Approval requirement operate in the same fashion as the "permit" requirement in *Frandsen* or the "licensing" requirement in *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215 (1990), essentially requiring government approval for expressive conduct before the expression can be legally made. *See also*

*Ward v. Rock Against Racism*, 491 U.S. 781, 795 n.5 (1989) (holding that in a prior restraint analysis, "[t]he relevant question is whether the challenged regulation authorizes suppression of speech in advance of its expression").

Prior restraints are not unconstitutional in every iteration, but "there is a strong presumption against their constitutionality." *Frandsen*, 212 F.3d at 1237. "As a general principle, the First Amendment bars the government from dictating what we see or read or speak or hear." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245 (2002); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 68 (1963) (holding that demands by government officials which threaten potential legal sanction if one continues to speak are prior restraints, even if government officials lack arrest powers because "[p]eople do not lightly disregard public officers' thinly veiled threats to institute criminal proceedings against them if they do not come around"); *Penthouse Int'l v. McAuliffe*, 610 F.2d 1353, 1369 (5th Cir. 1980) (same).

Prior restraint is censorship of the worst kind—it prevents expression from reaching the marketplace of ideas. *Southeastern Promotions v. Conrad*, 420 U.S. 546, 559 (1975) ("[A] free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand"). "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Indeed, the Supreme Court has written that "it has been generally,

if not universally, considered that it is the chief purpose of [the First Amendment] to prevent previous restraints upon publication." *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 713–14 (1931). Thus, "[a]ny prior restraint on expression comes . . . with a heavy presumption against its constitutional validity."[4]

Here there are no standards for when sponsorship will occur.  If one of the designated constitutional officers does not sponsor an event at Liberty Plaza, it cannot occur under Section 2.5(4).  Moreover, each of those designated as potential sponsors are Republicans, and Republicans have held all of those offices for over a decade, creating a distinct danger of viewpoint discrimination.

Even if one obtains a sponsor under Section 2.5(4), the Governor "retains the discretion" to deny a permit application.  His decision is completely unreviewable through any administrative or other appeal process.  The two undefined and content-based limits on this unreviewable discretion are whether the event is of "statewide significance" and "non-partisan." Giving a single person unreviewable discretion to grant or deny a permit based upon two undefined and content-based terms is the most offensive prior restraint possible.

---

[4] *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971); *see also Bantam Books*, 372 U.S. at 70 (prior restraint "comes to this Court bearing a heavy presumption against its constitutional validity"); *New York Times Co. v. United States*, 403 U.S. 713 (1971) (prohibiting prior restraint of "Pentagon Papers"); *Southeastern Promotions*, 420. U.S. at 557.

3.     <u>Section 2.5(4) is content-based and fails strict scrutiny.</u>

Section 2.5(4) treats speech differently based on the Governor's determination of whether the event is of "statewide significance" and "non-partisan." This content discrimination violates the First Amendment because it cannot withstand strict scrutiny review.

"[L]aws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based." *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 643 (1994). Content-based restrictions on speech are "presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). They are subject to the "most exacting scrutiny," *Turner*, 512 U.S. at 642, because they "pose the inherent risk that the Government seeks not to advance a legitimate regulatory goal, but to suppress unpopular ideas or information or manipulate the public debate through coercion rather than persuasion," *id*. at 641.

Recently, in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), the Supreme Court held that where distinctions were drawn entirely based on the communicative content of signs, the code was content-based on its face and subject to strict scrutiny. Actual desire to stifle certain circumscribed expressive content or to single out certain messages, the Court held, is irrelevant: "[a] law that is content based on its face is subject to strict scrutiny regardless of the government's benign

motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Id.* at 2228 (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)). Here, whether the event is of "statewide significance" and "non-partisan" are inherently content-based terms.

Because Section 2.5(4) imposes content-based restrictions on speech, "those provisions can stand only if they survive strict scrutiny, 'which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Town of Gilbert*, 135 S. Ct. at 2231 (quoting *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011)). Defendant bears this burden. *See id.* This burden is particularly difficult because the very content-based terms are undefined, and leave wide latitude to silence speech based upon its viewpoint. That danger is exacerbated by the unreviewable nature of the decision to approve or deny an event. Section 2.5(4) almost certainly cannot survive strict scrutiny.[5]

---

[5] *See Town of Gilbert*, 135 S. Ct. at 2232 ("[A] 'law cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction on truthful speech, when it leaves appreciable damage to that supposedly vital interest unprohibited.'" (quoting *Republican Party of Minn. v. White*, 536 U.S. 765, 780 (2002))); *City of Ladue v. Gilleo*, 512 U.S. 43, 51 (1994) ("[T]he notion that a regulation of speech may be impermissibly *underinclusive* is firmly grounded in basic First Amendment principles."); *Burk v. Augusta-Richmond Cty.*, 365 F.3d 1247 (11th Cir. 2004) (noting a gap between an ordinance's regulation of "countless expressive activities that do not threaten" its "purported goals" while leaving intact "other expressive activities that do threaten the harms," before

4.    Section 2.5(4) is vague and overbroad.

In addition to being content-based discrimination that cannot withstand strict scrutiny, Section 2.5(4) suffers from fatal imprecision. A law can be fatally imprecise on its face under two separate doctrines: vagueness under the Due Process Clause and overbreadth under the First Amendment. *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999). If a law fails either test, it is invalid on its face and void in all applications. Here, Section 2.5(4) fails both.

To start, Section 2.5(4) is unconstitutionally vague in its undefined terms "statewide significance" and "non-partisan." A law is unconstitutionally vague if "'it leaves the public uncertain as to the conduct it prohibits.'" *Id.* at 57 (quoting *Giaccio v. Pennsylvania*, 382 U.S. 399, 402–403 (1966)). Similarly, a law can be impermissibly vague in that it authorizes or "even encourage[s] arbitrary and discriminatory enforcement." *Id.* Because the key terms are so broad and their definitions so inherently elusive, there are no articulable standards for permit denial.

As the Supreme Court held in *Morales* in striking down a loitering ordinance, even if an elusive phrase could be readily understood by the public at

---

finding the ordinance could not survive strict scrutiny); *see also* 1 Smolla & Nimmer on Freedom of Speech § 2:67.50 (2016) (discussing the "Swiss cheese" principle in strict scrutiny jurisprudence).

large, there would still be the uncertainty of what kinds of conduct would be

permitted or barred under the law. There, the Court reasoned that

> [s]ince the city cannot conceivably have meant to criminalize each instance a citizen stands in public with a gang member, the vagueness that dooms this ordinance is not the product of uncertainty about the normal meaning of "loitering," but rather about what loitering is covered by the ordinance and what is not.

*Id.* at 57. In the First Amendment context, this vagueness is all the more offensive

because it "encourages arbitrary and erratic" enforcement, *Papachristou v. City of*

*Jacksonville*, 405 U.S. 156, 162 (1972), potentially based on the artist or the message

conveyed.

Section 2.5(4) is also unconstitutionally imprecise because it is overbroad.

"[T]he overbreadth doctrine permits the facial invalidation of laws that inhibit the

exercise of First Amendment rights if the impermissible applications of the law are

substantial when 'judged in relation to the statute's plainly legitimate sweep.'"

*Morales*, 527 U.S. at 53 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612–615 (1973)).

"Overbreadth review is a necessary means of preventing a 'chilling effect' on

protected expression." *Broadrick*, 413 U.S. 601, 630. Laws that regulate what kinds

of visual expression can go on private property can be "subject to attack on the

ground that they simply prohibit too much protected speech." *City of Ladue v.*

*Gilleo*, 512 U.S. 43, 52 (1994) (striking down a municipal ordinance that barred a

citizen from displaying a sign from her home).

5. <u>Section 2.5(4) conveys standardless discretion.</u>

The most compelling reason to strike Section 2.5(4) as unconstitutional is that it conveys standardless and unreviewable discretion to the Governor to decide what events will be permitted. It also places no time limits on decision making.[6]   As the Supreme Court explained in *Forsyth Cty., Ga. v. Nationalist*

---

[6] When it comes to prior restraints on speech, such undefined periods of time amount to impermissibly unbridled discretion. As the Supreme Court held in *FW/PBS, Inc. v. City of Dallas*, "[w]here the licensor has unlimited time within which to issue a license, the risk of arbitrary suppression is as great as the provision of unbridled discretion." 493 U.S. 215, 226–27 (1990). The Eleventh Circuit has repeatedly struck down permit-to-speak schemes that failed to provide absolute and narrow time limits. In *Barrett v. Walker County School District*, the Court found that a school board policy requiring those interested in speaking at future school board meetings must first meet with the Superintendent "poses enough of a risk that speech will be chilled or effectively censored on the basis of content or viewpoint." *Barrett v. Walker County School District*, No. 16-11952 (11th Cir. 2017). In *United States v. Fransden*, 212 F.3d 1231, 1240 (11th Cir. 2000), the Court considered a National Park Service regulation for permits and held that the failure to impose a deadline to begin consideration of a permit was unconstitutional:

> A park superintendent who does not agree with the political message to be espoused could allow the permit request to sit on his desk for an indefinite period of time—resulting in speech being silenced by inaction. The defect here is the same as that in *FW/PBS:* "[t]he failure to confine the time within which the licensor must make a decision . . . ." We hold that a regulation that merely requires a permit to be issued "without unreasonable delay" without more is unconstitutional, because it fails adequately to confine the time within which the decision

-16-

*Movement*:

> A government regulation that allows arbitrary application is "inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view." *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 649 (1981). To curtail that risk, "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license" must contain "narrow, objective, and definite standards to guide the licensing authority." *Shuttlesworth* [*v. Birmingham*, 394 U.S. 147, 150–151 (1969)]; *see also Niemotko* [*v. Maryland*, 340 U.S. 268, 271 (1951)]. The reasoning is simple: If the permit scheme "involves appraisal of facts, the exercise of judgment, and the formation of an opinion," *Cantwell v. Connecticut*, 310 U.S. 296, 305 (1940), by the licensing authority, "the danger of censorship and of abridgment of our precious First Amendment freedoms is too great" to be permitted, *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975).

505 U.S. 123, 130–31 (1992). While Section 2.5(4) is clearly content-based, "[e]ven a facially content-neutral time, place, and manner regulation may not vest public officials with unbridled discretion over permitting decisions." *Burke v. Augusta-*

---

maker must act.

(citations omitted); *see also Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1363 (11th Cir. 1999); *Redner v. Dean*, 29 F.3d 1495, 1500-01 (11th Cir. 1994). Because a single undefined time limit for approving speech is constitutionally suspect, Section 2.5(4) clearly fails the First Amendment requirements set forth in *FW/PBS* and *Frandsen*.

*Richmond Cty.*, 365 F.3d 1247, 1256 (11th Cir. 2004).

Section 2.5(4) has standardless discretion at every level of the approval process: (1) The Sponsor has no standards; (2) The Governor's standards for approval (non-partisan/statewide significance) are not defined, are vague and are content based; (3) The Governor's decision is unreviewable.    These kinds of determinations—without any additional criteria—"involve[] appraisal of facts, the exercise of judgment, and the formation of an opinion," *Cantwell*, 310 U.S. at 305, which makes the danger of suppression of protected speech too great to bear. *Forsyth Cty., Ga. v. Nationalist Movement*, 505 U.S. 123, 130–31 (1992); *Barrett v. Walker County School District*, No. 16-11952 (11th Cir. 2017) (discretion in permit scheme "poses enough of a risk that speech will be chilled or effectively censored on the basis of content or viewpoint").

## II.   Plaintiffs Will Suffer Irreparable Harm If The Injunction Is Not Issued

The second factor for the Court to determine is whether the Plaintiffs will suffer irreparable harm absent a preliminary injunction. The answer is simple: "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005). Plaintiffs face a denial of their right to have an event at the Georgia State Capitol.  *K.H. Outdoors LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006) (citations and

quotations omitted).

### III.  Granting The Injunction Will Not Cause Substantial Harm To Others

Issuance of the injunctions sought will not cause any harm to Defendant. Section 2.5(4) is clearly unconstitutional.   Government "has no legitimate interest in enforcing an unconstitutional ordinance." *Id.*

### IV.  These Narrow Injunctions Are In The Public Interest

The protection of free speech rights is always in the public interest, and the injunctions sought here will assure Plaintiffs' rights and the rights of others.

### CONCLUSION

For all the above reasons, Plaintiffs request that this Court enter preliminary and permanent injunctions as set out in Plaintiffs' Motion.

This 12th day of March, 2018.

Respectfully Submitted,


*/s/ Gerald Weber*
Gerald Weber, Ga. Bar No. 744878
LAW OFFICES OF GERRY WEBER, LLC
Post Office Box 5391
Atlanta, GA 31107
404-522-0507
wgerryweber@gmail.com

*/s/ Nora Benavidez*
Nora Benavidez, Ga. Bar No. 698687
Law Office of Nora Benavidez
Post Office Box 8161
Atlanta, GA 31106
310-365-5658
nora.benavidez@gmail.com


*Attorneys for Plaintiffs*

## <u>CERTIFICATION OF COMPLIANCE</u>

The undersigned, in accordance with L.R. 7.1 and 5.1 hereby certifies that the typefont used herein is 13-Point Book Antiqua.

This 12th day of March, 2018

<u>/s/ Gerald Weber</u>
Gerald Weber
Georgia Bar No. 744878

## <u>CERTIFICATION OF ELECTRONIC FILING</u>

The undersigned hereby certifies the filing of this Complaint, motion and accompanying brief, and verifications upon the parties and all counsel by the Court's Electronic Filing System.

This 12th day of March, 2018

/s/ Nora Benavidez
Nora Benavidez
Georgia Bar No. 698687